IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GABRIEL EDWARDS,** | : | **CIVIL NO. 1:15-CV-1116** |
| Petitioner | : | (Chief Judge Conner) |
| v. | : | |
| **ROBERT L. FARLEY, WARDEN,**[1] | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Gabriel Edwards ("Edwards"), an inmate formerly confined at the United States Penitentiary, in Lewisburg, Pennsylvania ("USP-Lewisburg"). (Doc. 1). Edwards contends that his due process rights were violated in the context of a disciplinary hearing held at USP-Lewisburg. The petition is ripe for disposition and, for the reasons that follow, will be denied.

**I.    Background**

On February 13, 2015, while incarcerated at USP-Lewisburg, Edwards was charged in incident report number 2682784 with conduct disruptive to the security of the institution, in violation of Federal Bureau of Prisons ("BOP") prohibited acts code section 299, tampering with a locking device, in violation of code 208, engaging

---

[1] Pursuant to 28 U.S.C. § 2243, the proper respondent in a habeas action is "the person having custody of the person detained." Therefore, the Clerk of Court will be directed to substitute Robert L. Farley, Warden at the United States Penitentiary, Big Sandy, in Inez, Kentucky, as the sole respondent in this action.

in a group demonstration, in violation of code 212, and refusing to obey an order, in violation of code 307.  (Doc. 1-1 at 2; Doc. 6-2 at 11, Incident Report).  The incident is described as follows:

> On February 13, 2015, at approximately 10:07 a.m., Inmate Edwards, Gabriel #26282-018, had barricaded himself in B-115.  This inmate was unresponsive to staff directive to remove the covering of his window and remove the objects placed in front of his food slot.  This inmate could not be observed or approached safely by staff, and refused all staff directives.  This inmate was one of 36 inmates involved in this group demonstration that resulted in an emergency response to contain the situation.  This inmate was removed from his cell after chemical agents and less lethal munitions were deployed into the cell.

(Doc. 6-2 at 11, Incident Report).

On March 24, 2015, Edwards appealed the disciplinary hearing officer's decision by filing Administrative Remedy Number 815112-R1 with the Regional Office.  (Doc. 6-2 at 36, Administrative Remedy Generalized Retrieval).  On April 23, 2015, the Regional Office denied Administrative Remedy Number 815112-R1.  (Id.)

On May 5, 2015, Edwards filed two appeals of Administrative Remedy Number 815112-R1 to the BOP Central Office, designated as Administrative Remedy Numbers 815112-A1 and A2.  (Id.)  On June 5, 2015, the BOP Central Office rejected both appeals.  (Id. at 36-37).  Edwards was informed that he did not submit the proper papers with his appeal.  (Id.)  The Central Office advised him to resubmit his appeal in proper form within fifteen (15) days of the date of the rejection notice.  (Id.)

On May 11, 2015, Edwards refiled his appeal, designated as Administrative Remedy Number 815112-A4.  (Id. at 37).  The Central Office accepted the appeal for response.  (Id.)  The Central Office had forty days to respond, with the option to

extend that time for an additional twenty days. (Doc. 6-2, Declaration of Jennifer Knepper, BOP Attorney Advisor ("Knepper Decl."), ¶ 8, citing 28 C.F.R. § 542.18).

On June 1, 2015, Edwards filed another appeal of the DHO hearing, designated as Administrative Remedy Number 815112-A3. (Doc. 6-2 at 38, Administrative Remedy Generalized Retrieval). On June 23, 2015, subsequent to the filing of the instant petition, the Central Office rejected Administrative Remedy Number 815112-A3 as untimely. (Id.) The Central Office advised Edwards to resubmit his appeal within fifteen (15) days of the date of the rejection notice with staff verification stating that the untimely filing was not his fault. (Id.) There is no evidence that Edwards submitted any further appeals.

The instant petition was filed on or about June 3, 2015. (Doc. 1). In the petition, Edwards claims that his due process rights were violated during the course of the prison disciplinary hearing. (Id.) Edwards asserts that prison staff altered the delivery date on the incident report, his requested staff representative was not present at the hearing, the reporting officer's description of the incident in the incident report is embellished and misleading, the DHO was not impartial, and BOP staff members used excessive force when they responded to the incident at issue. (Id. at 1-5). For relief, Edwards requests that the court restore his good time credits. (Id. at 5).

3

## II. <u>Discussion</u>

### A. **Exhaustion**

Respondent argues that the petition should be denied based on Edwards' failure to comply with the BOP's administrative review process. (Doc. 6 at 7-9). Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. See <u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." <u>Moscato</u>, 98 F.3d at 761-62 (citing <u>Bradshaw v. Carlson</u>, 682 F.2d 1050, 1052 (3d Cir. 1981)). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. <u>See, e.g.</u>, <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury"); <u>Carling v. Peters</u>, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP's administrative review remedy program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 6-2, Knepper Decl. ¶ 6, citing 28 C.F.R. § 542.10, *et seq.*). With respect to disciplinary hearing decision appeals, a BOP inmate can initiate the first step of the administrative review process by filing a direct written appeal to the BOP's Regional Director (thus bypassing the institutional level of review) within twenty days after receiving the DHO's written report. (Id.) If dissatisfied with the Regional Director's response, a Central Office Appeal may then be filed with the BOP's Office of General Counsel. (Id.) This is the inmate's final available administrative appeal. No administrative appeal is considered fully exhausted until a decision is reached by the BOP's Central Office. See Sharpe v. Costello, 2008 WL 2736782, at *3 (3d Cir. 2008).

In the instant matter, Edwards failed to exhaust the available administrative remedies. Edwards filed his two initial administrative remedies with the Regional Office. The appeals were denied. Edwards then filed appeals with the Central Office. The Central Office rejected both appeals because they were submitted in improper form. Edwards was given an opportunity to resubmit his appeals in proper form.

On May 11, 2015, Edwards refiled his appeal, which the Central Office accepted for review. (Id.) The Central Office had forty days to respond, with the option to extend that time for an additional twenty (20) days. Edwards filed the instant federal habeas petition before the response to his appeal was due.

On June 1, 2015, Edwards filed another appeal of the DHO hearing. (Doc. 6-2 at 38, Administrative Remedy Generalized Retrieval). On June 23, 2015, subsequent to the filing of the instant petition, the Central Office rejected the remedy as untimely filed. (Id.) The Central Office advised Edwards to resubmit his appeal within fifteen (15) days of the date of the rejection notice with staff verification stating that the untimely filing was not his fault. (Id.) There is no evidence that Edwards submitted any further appeals.

In response to this argument, Edwards claims that the BOP is attempting to "mislead and manipulate" the court, and has altered their records submitted to the court. (Doc. 7 at 2-3). Additionally, Edwards claims that the "issue of the Administrative Remedy should be rendered moot" because the BOP Central Office has since denied his appeal as untimely. (Id. at 3). Yet, Edwards filed his federal habeas petition prior to the Central Office's denial of his appeal. An administrative remedy appeal is not fully and finally exhausted until it has been denied by the BOP's Central Office. Erring on the side of the petitioner, the court finds that Edwards has alleged facts that potentially excuse exhaustion, and the court will proceed to the merits.

### B.     Merits

The instant habeas petition fails on the merits. On February 13, 2015, Edwards was served with incident report number 2682784, charging him with a code 299 violation for conduct disruptive to the security of the institution, a code 208 violation for tampering with a locking device, a code 212 violation for engaging in a

group demonstration, and a code 307 violation for refusing to obey an order. (Doc. 6-2 at 11, Incident Report).

On February 13, 2015 Lieutenant B. Shirk gave Edwards advanced written notice of the charges against him. (Id. at 12). During the investigation of the incident, Edwards was advised of his right to remain silent, and he indicated that he understood his rights. (Id.) Edwards declined to comment on the charges, and declined to identify any witnesses. (Id.) Based on the description of the incident and Edwards' failure to identify any witnesses, the investigator referred the matter to the Unit Discipline Committee ("UDC") for further action. (Id.)

On February 16, 2015, Edwards appeared before the UDC. (Id. at 11). Edwards was advised of his rights and he acknowledged that he understood them. Edwards stated, "I was denied my constitutional rights for not receiving our 8s." (Id.) Due to the reporting requirements, the UDC referred the incident to the DHO with a recommendation that sanctions be imposed. (Id.)

A staff member informed Edwards of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 6-2 at 14, Inmate Rights at Discipline Hearing). Edwards was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 6-2 at 13, Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)). Edwards refused to sign both forms, and elected not to call any witnesses. (Id.) Edwards requested B. Tharp as a staff representative. (Id.)

On February 20, 2015, Edwards appeared for a hearing before DHO B. Chambers. (Doc. 6-2 at 17, DHO Report). The DHO advised Edwards that his

7

requested staff representative, Mr. Tharp, was out of the institution in training. (Id.)  The DHO gave Edwards the option of postponing the hearing until Mr. Tharp was available, or obtaining another staff representative.  (Id.)  Edwards elected to waive his right to a staff representative and proceed with the hearing.  (Id.)  Edwards was unable to sign the waiver because his hands were in restraints behind his back.  (Id.)[2]  The DHO noted that a staff member was present and witnessed Edwards' waiver of his right to a staff representative.  (Id.)

During the February 20, 2015 hearing, the DHO confirmed that Edwards received advanced written notice of the charges on February 13, 2015, that he had been advised of his rights before the DHO on February 16, 2015, that he waived his right to a staff representative, and did not request to call any witnesses.  (Id.)  The DHO again advised Edwards of his rights, Edwards indicated that he understood them, and that he was ready to proceed with the hearing.  (Id.)  Edwards testified that he did not dispute the accuracy of the description of the incident set forth in incident report, but he denied committing any prohibited act.  (Id.)  Edwards made the following statement regarding the charges, "my cellie … already took responsibility for this incident during his hearing."  (Id.)  He presented no documents in support of his position.  (Id.)  Edwards' cellmate at the time of the incident appeared as a witness and testified as follows, "I already accepted responsibility for committing this act at my own DHO hearing.  He (Edwards) was

---

[2] Viewed in its entirety, the record clearly reflects a knowing and voluntary waiver.  However, the court would be remiss if it did not express dismay over the failure to temporarily implement alternative security measures to enable a simple signature, e.g. frontal restraints.

just standing at the back of the cell during the incident. He didn't have anything to do with it." (Id.)

After consideration of the evidence, the DHO found that Edwards committed the prohibited acts of interfering with security devices and engaging in a group demonstration. (Id. at 18). The DHO explained his findings as follows:

> The DHO finds that inmate Edwards committed the prohibited acts of Interfering with Security Devices and Engaging in a Group Demonstration, Codes 208 and 212. This finding is based on the eyewitness written account of the reporting officer, which indicates on 02-13-2015 at approximately 10:07 a.m., inmate EDWARDS, Gabriel #26283-018 had barricaded himself in B-115. Inmate Edwards was unresponsive to staff directives to remove the covering from his cell door window and move the objects placed in front of his food slot in his cell door. Inmate Edwards could not be observed or approached safely by staff and refused all staff orders. Inmate Edwards was one of 36 inmates involved in a group demonstration that resulted in an emergency response to contain the situation. Inmate Edwards was removed from his cell after chemical agents and less lethal munitions were deployed into the cell.
>
> The finding is further based upon the statement of inmate Edwards to the UDC, as documented in Section 17 of the incident report. Inmate Edwards stated, in reference to Section 11 of the incident report, "I was denied my constitutional rights for not receiving BP-8's (Informal Resolution Attempt Forms)."
>
> This finding is further based on the testimony of inmate Edwards, in which he acknowledged that he is not disputing the accuracy [of] Section 11 of the incident report in this case.
>
> Inmate Edwards denied, however, committing any prohibited act in this case. Inmate Edwards testified "my cellie (Roszkowski, #03679-049) already took responsibility for this incident during his hearing." Edwards presented evidence in support of his defense in the form of witness testimony from inmate ROSZKOWSKI, Arjusz, #03679-049, who testified "I already accepted responsibility for committing this act at my own DHO hearing. He (Edwards) was just standing at the back of the cell during the incident. He didn't have anything to do with it."

The DHO gives the greater weight of the evidence in this case to the eyewitness written account of the reporting officer, as well as the statement or inmate Edwards to the UDC, as documented in Section 17 of the incident report in which he stated, in reference to Section 11 of the incident report, "I was denied my constitutional rights for not receiving BP-8's (Informal Resolution Attempt Forms)." This evidence indicates on 02-13-2015 at approximately 10:07 a.m., inmate EDWARDS, Gabriel #26283-018 had barricaded himself in B-115. Inmate Edwards was unresponsive to staff directives to remove the covering from his cell door window and move the objects placed in front of his food slot in his cell door. Inmate Edwards could not be observed or approached safely by staff and refused all staff orders. Inmate Edwards was one of 36 inmate involved in a group demonstration that resulted in an emergency response to contain the situation. Inmate Edwards was removed from his cell after chemical agents and less lethal munitions were deployed into the cell.

The DHO has considered as evidence in this case the testimony of inmate Edwards, in which he denied committing any prohibited act in this case, as well as the testimony of his cellmate at the time of the incident, inmate Roszkowski, #03679-049, who attempted to accept responsibility for Edwards' actions inside of the barricaded cell during the incident. The DHO considers this evidence to be less credible, thereby giving it lesser weight than that to which the greater weight is given in this case, for the following reasons. First, neither Inmate Edwards nor Roszkowski disputes cell B-115 was barricaded during the incident, and that neither inmate responded to staff directives to remove the cell door window covering and the barricade material from the cell door, and to submit to hand restraints. Given these facts, inmate Edwards must be held accountable for his actions as an individual inside the cell, despite inmate Roszkowski's attempt to claim sole responsibility for participation in the incident in this case. Despite Roszkowski's testimony "I already accepted responsibility for committing this act at my own DHO hearing. He (Edwards) was just standing at the back of the cell during the incident. He didn't have anything to do with it", there was absolutely no evidence presented during the hearing leading to a conclusion that Edwards was in any way physically compelled to participate in the incident. Further, there was no evidence presented indicating Edwards was threatened in any way, thereby leading to a conclusion he may have been coerced into being unresponsive to staff directives to remove the covering from his cell door window and move the objects placed in front of his food slot in the cell door. Moreover, the DHO notes Edwards' statement to the UDC "I was denied my constitutional rights for not receiving BP-8's (Informal Resolution Attempt Forms)", and considers this statement

10

>compelling evidence Edwards was, in fact, a willing participant in the incident, as the statement was clearly made in an attempt to justify or rationalize his actions during the incident. If Edwards had in fact not been involved in the incident as he alleges, he would have had no reason to make such a statement. The evidence, therefore, when considered in its entirety, supports a finding Edwards made a conscious choice to participate in the incident, and therefore must be held accountable for his actions as an individual inside cell B-115 during the incident.
>
>The greater weight of the evidence in this case, therefore, supports the finding inmate Edwards committed the prohibited acts of Interfering with Security Devices and Engaging in a Group Demonstration, Codes 208 and 212.

(Id.)

As such, the DHO sanctioned Edwards with a total of fifty-four (54) days disallowance of good conduct time, sixty (60) days in disciplinary segregation, and two hundred forty (240) days loss of commissary, telephone, and visiting privileges. (Id. at 19-20). The DHO noted that the acts of interfering with security devices and engaging in a group demonstration inherently jeopardize the security and good order of the institution. (Id.) Therefore, the sanctions imposed were intended to punish Edwards and to deter future misconduct. (Id.) Edwards was advised of his appeal rights at the conclusion of the hearing. (Id. at 20).

Edwards' sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. See

Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident

report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. §§ 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the present matter, it is clear that Edwards was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. The DHO advised

Edwards that his requested staff representative was unavailable, and Edwards chose to waive his right to a staff representative and proceed with the hearing. Edwards initially declined to call any witnesses, however his cellmate ultimately testified at the hearing. Edwards presented no further evidence in support of his position. At the conclusion of the hearing, Edwards received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Edwards was also notified of his right to appeal.

Since Edwards was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record unequivocally reveals the existence of sufficient evidence to conclude that Edwards was guilty of the charges. The DHO relied upon the eyewitness account of the reporting officer, Edwards' statement to the UDC, and his admission that the description of the incident in the incident report was true. (Id.) The DHO afforded less weight to Edwards' self-serving denial of the prohibited acts charged, and his cellmate's attempt to accept responsibility for the incident. Based upon this evidence as relied upon by the DHO, the court finds that Edwards' due process rights were not violated by the determination of the DHO.

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq*. Edwards was found guilty of two 200-level, high severity prohibited acts. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level offenses:

    A.      Recommend parole date rescission or retardation.

    B.      Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

    B.1    Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

    C.      Disciplinary segregation (up to 6 months).

    D.     Make monetary restitution.

    E.      Monetary fine.

    F.      Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

    G.     Change housing (quarters).

    H.     Remove from program and/or group activity.

    I.      Loss of job.

    J.      Impound inmate's personal property.

    K.     Confiscate contraband.

    L.      Restrict to quarters.

    M.    Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the

maximum available to the DHO.  Accordingly, the petition will be denied as to incident report number 2682784.[3]

**III.    Conclusion**

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order shall issue.

          /S/ CHRISTOPHER C. CONNER
          Christopher C. Conner, Chief Judge
          United States District Court
          Middle District of Pennsylvania

Dated:  December 21, 2016

---

[3] To the extent that Edwards attempts to allege an excessive force claim, this claim is not cognizable in a habeas corpus action.  (Doc. 1 at 2-3).  A habeas petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 494 (1973); Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993).  When seeking to impose liability due to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, the appropriate remedy is a civil rights action.  See Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2001).  "Habeas corpus is not an appropriate or available federal remedy."  See Linnen v. Armainis, 991 F.2d 1102, 1109 (3d Cir. 1993).